**David Paul PIKE, Petitioner,**

v.

**CIVIL AERONAUTICS BOARD and Najeeb E. Halaby, Administrator of the Federal Aviation Agency, Respondents.**

**No. 16740.**

United States Court of Appeals
Eighth Circuit.

May 16, 1962.

Charles H. Baker, of Riddle, Baker & O'Herin, Malden, Mo., Veryl L. Riddle and Edward F. O'Herin, Malden, Mo., and also Langdon R. Jones and Robert H. Jones, Kennett, Mo., on the brief, for petitioner.

William L. Howard, Jr. Attorney, Civil Aeronautics Board, Washington, D. C., O. D. Ozment, Associate General Counsel, Litigation and Research, Washington, D. C., Lee Loevinger, Asst. Atty. Gen., Washington, D. C., Richard A. Solomon, Attorney, Dept. of Justice and

John H. Wanner, General Counsel, Civil Aeronautics Board, on the brief, for respondents.

Before VOGEL, VON OOSTERHOUT and BLACKMUN, Circuit Judges.

BLACKMUN, Circuit Judge.

David Paul Pike, a resident of Missouri and a holder of airman certificates, seeks review of an order of the Civil Aeronautics Board which revoked those certificates on the ground, essentially, that Pike was unqualified to hold them. Jurisdiction under § 1006 of the Federal Aviation Act of 1958, 49 U.S.C.A. § 1486, is established. The Board's order, with one member dissenting, vacated its examiner's ruling dismissing the complaint filed by the Administrator of the Federal Aviation Agency. We, in turn, reverse.

The question is whether Pike, although he was a certificated commercial pilot, violated the applicable statute and regulations by giving dual flight instruction to three students at a time when he, Pike, did not possess a flight instructor's certificate. There is no challenge here to the findings of fact which have been made and we are confronted with no problem of the sufficiency of the evidence to support those findings.

Pike, born in 1922, operates an airport at Caruthersville, Missouri, owns aircraft and hangars there, engages in crop dusting and charter flights, and is a pilot in the Air Force Reserve. He possesses flight time of over 12,000 hours, 4,400 of which were in military aircraft. At all times material here Pike has held an airman certificate with commercial pilot privileges and airplane single and multi-engine land and instrument ratings. In December 1959 the Administrator issued to him, in addition, a limited flight instructor's certificate.

In October 1959, while Pike held his airman certificate but before he acquired his limited flight instructor's certificate, he was served with notice of charges by the Administrator. On January 12, 1960, after an informal hearing, the Administrator revoked Pike's airman certificate because of claimed violations of § 610(a) (2) of the Civil Aeronautics Act of 1938, as amended, and of § 610(a) (2) of the Federal Aviation Act of 1958, 49 U.S.C.A. § 560(a) (2) and § 1430(a) (2). Pike, pursuant to the provisions of § 609 of the 1958 Act, 49 U.S.C.A. § 1429, appealed to the Board; the Administrator then filed his complaint with the Board for affirmation of the order of revocation.

This complaint alleged among other things (a) that Pike, on about thirty stated occasions in the years 1955 to 1959, inclusive, gave dual flight instruction to Darrell A. Dugger, John M. Cantrell and William E. Morris, holders of student pilot certificates; (b) that on each of these occasions Pike did not hold an airman certificate authorizing him to serve in the capacity of a flight instructor; (c) that in so doing he was in violation of § 610(a) (2) of the applicable Act; (d) that because of these and other violations of the Acts and of the Civil Air Regulations, Pike had demonstrated a disregard for regulation and safety in air commerce so as to warrant, in the public interest, the revocation of his airman certificate; and (e) that the order of revocation of his certificate was accordingly issued. Pike's responsive pleadings contained a general denial and other defenses not pertinent on this appeal.

An examiner's hearing ensued. He found that Pike did give the flight instruction to the three students prior to his acquisition of a separate limited flight instructor's certificate. Pike had denied this but the examiner gave no credence to his testimony and actually noted a question as to his veracity. Nevertheless, the examiner dismissed the Administrator's complaint. He did so primarily on the grounds that the term "airman" is not defined by the statute to include "flight instructor"; that the statute's prohibition against one's serving as an airman in an uncertified capacity

therefore did not apply to Pike's acts; and that the Regulations also did not prohibit Pike's flight instruction.

On the appeal to the Board, however, its majority held that both the statute and the Regulations barred Pike's instruction. In so doing they stated, "Apparently there has not been a direct ruling on this question under the current framework of the regulations". Member Gilliland, in dissent, emphasized that the majority's decision did not rest on the ground that Pike endangered anyone or lacked qualification to perform the acts complained of but merely on the ground that he had not been formally authorized at the time to perform those acts. He noted that since December 18, 1959, Pike has had his limited flight instructor's certificate.

The case thus basically concerns only the construction of the statute and the interpretation of the Regulations. We look initially at these.

The Civil Aeronautics Act of 1938, 52 Stat. 973, 49 U.S.C.A. §§ 401-681, and the Federal Aviation Act of 1958, 72 Stat. 731, 49 U.S.C.A. §§ 1301-1542, which supplanted the 1938 Act, clearly embody a comprehensive scheme for the regulation of the safety aspects of aviation. See Nebraska Department of Aeronautics v. C. A. B., 8 Cir., 1962, 298 F.2d 286, 291; Lee v. C. A. B., 1955, 96 U.S. App.D.C. 299, 225 F.2d 950, 951; Air Lines Pilots Ass'n International v. Quesada, 2 Cir., 1960, 276 F.2d 892, 894, 897, cert. den. 366 U.S. 962, 81 S.Ct. 1923, 6 L.Ed.2d 1254. This is evident from a review of §§ 601-610 and 701-702 of the 1938 Act, as amended, 49 U.S.C.A. §§ 551-560 and 581-582, and of §§ 601-610 and 701-703 of the 1958 Act, 49 U.S.C.A. §§ 1421-1430 and 1441-1443. In particular, § 601(a) (6) [1] of each Act confers upon the Administrator (or, under the 1938 Act, upon the Board) general rule-making authority governing practices as may be found "necessary to provide adequately for * * * safety in air commerce". Then § 602(a) [2] empowers the Administrator "to issue airman certificates specifying the capacity in which the holders thereof are authorized to serve as airmen in connection with aircraft"; § 602(b) [3] authorizes the issuance of a certificate if the Administrator finds that the applicant possesses "proper qualifications" therefor; § 610 (a) (2) [4] declares it unlawful

"For any person to serve in any capacity as an airman in connection with any civil aircraft, * * * in air commerce without an airman certificate authorizing him to serve in such capacity, or in violation of any term, condition, or limitation thereof, or in violation of any order, rule, or regulation issued under this subchapter; * * *"

and § 609 [5] authorizes, under certain conditions, the issuance of an order suspending or revoking any type of certificate, including an airman certificate. § 102(b) and (e), § 103(a) and (c) and § 307(c) of the 1958 Act,[6] and § 2(b) and (e) of the 1938 Act [7] are other statutory provisions emphasizing safety. § 901 [8] provides for a civil penalty of not to exceed $1,000 for each violation of the statute. Except for those specified in § 902,[9] not applicable here, there are no criminal penalties for safety violations.

1. 49 U.S.C.A. § 551(a) (6), § 1421(a) (6).

2. 49 U.S.C.A. § 552(a), § 1422(a).

3. 49 U.S.C.A. § 552(b), § 1422(b).

4. 49 U.S.C.A. § 1430(a) (2). The language quoted is from the 1958 Act. This is somewhat broader than, and not identical with, the language of the corresponding § 610(a) (2) of the 1938 Act, 49 U.S.C.A. § 560(a) (2), but for present purposes the differences are not material and need not be specified here.

5. 49 U.S.C.A. § 559, § 1429.

6. 49 U.S.C.A. §§ 1302(b) and (e), 1303 (a) and (c) and 1348(c).

7. 49 U.S.C.A. § 402(b) and (e).

8. 49 U.S.C.A. § 621, § 1471.

9. 49 U.S.C.A. § 622, § 1472.

Pursuant to the rulemaking authority granted by § 601 of the 1938 Act, the Board did in fact issue safety regulations for airman licenses. These were adopted by the Administrator in 1958 when he assumed the safety rulemaking function and have been continued without substantial change pertinent to the present proceeding. The Board and the Administrator in their brief concede that the Regulations do not expressly forbid unlicensed instruction. Yet the Regulations do seek to spell out, with respect to a flight instructor's certificate, the "proper qualifications" mentioned by § 602(b). A flight instructor is defined to be "a certificated pilot authorized by the Civil Air Regulations to give flight instruction". One is not to pilot a civil aircraft without "appropriate ratings issued by the Administrator". An applicant obtains a limited flight instructor's certificate by demonstrating his ability properly to instruct students and by showing his familiarity with the methods and procedures set forth in the Flight Instruction Manual. A limited flight instructor's duties and responsibilities include the examination of the student pilot to determine his competency to make solo flights and solo cross-country flights, the entering of appropriate indorsements on the student pilot certificate, the signing of the student's log book for each period of flight instruction, and the maintenance of his own records of flight instruction time and indorsements entered. The student, in applying for a private pilot certificate, must present a reliable log book record and his student certificate appropriately indorsed by a certified instructor. Upon meeting certain requirements, including a satisfactory one year probationary period, a limited flight instructor is entitled to a regular certificate. There are specified limitations, too, in flight instruction as to aircraft category, hours of instruction per day and per week, and the like. 14 C.F.R. 20.5, 20.16, 20.23–4, 20.34, 20.130–8, 43.40, and 43.64.[10]

■ We state initially that we entertain no doubt whatever that the Administrator has the power, in view of his broad rulemaking authority under the Act and the statute's emphasis on safety, to prescribe that dual flight instruction shall be given only by a certified commercial pilot who also possesses a flight instructor's certificate. See Wilson v. C. A. B., 1957, 100 U.S.App.D.C. 325, 244 F.2d 773, cert. den. 355 U.S. 870, 78 S.Ct. 119, 2 L.Ed.2d 75; Hard v. C. A. B., 7 Cir., 1957, 248 F.2d 761, cert. den. 355 U.S. 960, 78 S.Ct. 543, 2 L.Ed.2d 534. The issue, then, is whether there has been an exercise of that power.

Certainly the statute is not specific. § 101's definition of "airman", so far as it is pertinent here, is directed toward a pilot in actual navigation of an aircraft. § 602 merely authorizes the issuance of "airman certificates" although it does prescribe that these certificates are to specify "the capacity in which holders thereof are authorized to serve as airmen in connection with aircraft". It goes on further to prescribe that a certificate shall be issued with such conditions and limitations as are determined "to be necessary to assure safety in air commerce". § 609 provides for the amendment or revocation of any type of certificate including an airman certificate. And § 610 declares it unlawful for anyone to serve "in any capacity as an airman in connection with any civil aircraft * * * in air commerce without an airman certificate authorizing him to serve in such capacity * * *".

One searches these statutory provisions in vain for any reference to flight instruction, to capacity as a flight instructor, or to a flight instructor's certificate. Although the statute does speak in terms of various capacities, it contains no definiteness of description in that respect. Perhaps we should not expect the statute to be more positive for capacity limitation seems to be ap-

---

10. 14 C.F.R. 439.61 specifically permits a commercial glider pilot to give glider instruction out an instructor's rating.

propriate material for the more flexible area of administrative regulation.

The Regulations themselves are scarcely more specific. They do refer to flight instruction and to flight instructor and to the issuance of flight instructor's certificates and the qualifications therefor. The gap, however, lies in the absence of a provision stating, or providing a basis for an unquestionable inference, that the holding of an airman certificate is not equivalent to qualification as a flight instructor or to the holding of a flight instructor's certificate. This is the gap which the Administrator and the Board attempt to bridge by their arguments about implied prohibition in the Regulations of unlicensed flight instruction.

 This lack of specificity and completeness of the Regulations disturbs us for this case. Because of this, we are disinclined to reach a result, drastic in its application to the individual concerned (whether it be Pike or any other), which deprives an airman of admitted experience and ability of his primary means of livelihood. Compare Carey v. C. A. B., 1 Cir., 1960, 275 F.2d 518, 524; Garber v. C. A. B., 2 Cir., 1960, 276 F.2d 321, 323; Walker v. C. A. B., 2 Cir., 1958, 251 F.2d 954, 956. We prefer to have, where a result of that magnitude is to be forthcoming, a statute or regulation which is more positive and definite than those here involved.

This, however, is not the only reason for our conclusion. There are others:

1. The actual issuance of a flight instructor's certificate to Pike in December 1959. This fact, if it does not belie, is at least inconsistent with the strenuously urged claim of lack of Pike's trustworthiness. It must imply, too, the Administrator's acceptance and approval of his ability, not only as a pilot, but as an instructor of student pilots. There is nothing in the record to indicate that the issuance of this certificate was due to any newly acquired prowess or repentant attitude on the part of Pike between the time of the challenged instruction in 1955–1959 and the issuance of this additional certificate.

2. The Board's interpretation of its own regulations may well be entitled to great weight. Bowles v. Seminole Rock & Sand Co., 1945, 325 U.S. 410, 413–414, 65 S.Ct. 1215, 89 L.Ed. 1700. See Danielson v. C. A. B., 2 Cir., 1953, 204 F.2d 266, 268, and Outland v. C. A. B., D.C. Cir., 1960, 284 F.2d 224, 228–229. But the Board in its own order here concedes the absence of "a direct ruling on this question under the current framework of the regulations" and, in its brief, further concedes that it has not "heretofore had occasion to rule on this precise point". Administrative interpretation of long standing is thus not present.

3. The alleged violations here, if they concern safety at all, are obviously of lower degree than certain others which have been involved in reported litigation. They are less vital than, for example, the violation which bore directly upon the safety and welfare of commercial passengers in this court's recent case of Specht v. C. A. B., 8 Cir., 1958, 254 F.2d 905, 78 A.L.R.2d 1135. We cannot take issue with the Board and the Administrator when they stress the importance of adequate flight instruction under properly qualified instructors. Here, however, there seems to be little question of Pike's basic training and his capability as a pilot and, for that matter, as evidenced by his acquisition of a flight instructor's certificate, as a flight instructor. And any particular student pilot's progress is dependent upon more than one man's instruction.

4. Our feeling that the revocation provisions of the statute in their application to Pike on this record have at least some penal aspect. We may accept for present purposes—although we need not and do not now pass upon the question—that revocation of an airman's certificate for safety considerations is remedial rather than penal and that the rule that a penal statute is to be strictly construed is perhaps not applicable here. In the Specht case, supra, we said, p. 917 of 254

F.2d, with respect to the revocation of a pilot's airline transport pilot rating, "* * * the primary effect of that revocation is remedial, in that a pilot not qualified to command an airline transport aircraft has been denied the authority to do so". See also Wilson v. C. A. B., supra, p. 774 of 244 F.2d. Compare Didriksen v. F. C. C., 1958, 103 U.S.App.D.C. 17, 254 F.2d 354, 356. But it is logical to assume—and it is borne out by the very example of Pike's own 1952 experience when he was charged with similar violations—that suspension or revocation will be followed by the imposition of a civil penalty under § 901.[11] Such a penalty certainly is punitive. This at least prompts us to view the statute with an attitude of reasonable strictness and to demand for this case a stronger statutory or regulation basis than we are presently able to discover. See Judge Prettyman's dissent in Lee v. C. A. B., supra, p. 953 of 225 F.2d. Compare Helvering v. Mitchell, 1938, 303 U.S. 391, 399–404, 58 S.Ct. 630, 82 L.Ed. 917.

5. The confusion attendant upon past changes in the Regulations. From September 1, 1942, to July 1, 1945, § 20.80 of the Civil Air Regulations did expressly prohibit the giving of flight instruction without a flight instructor's rating. That provision, however, was deleted from the Regulations on the latter date. Moreover, § 43.66 embraced, but only until April 11, 1957, the somewhat enigmatical provision, "Instrument flight instruction may be given only by a person holding an effective instrument rating. A flight instructor rating is not required". Certainly this history gives some substance to the argument that the deletion of a positive requirement indicates that the requirement is no longer in effect.

6. The inconclusiveness of Pike's 1952–3 difficulties. In 1952 the Board held that Pike, in spite of warnings, had violated the Regulations by giving flight instruction when he did not have a flight instructor's rating, and suspended his airman certificate for three months. 13 C.A.B. 539. Upon his continuing to pilot and instruct when he was without his certificate during that period, a civil penalty under § 901 of the 1938 Act was imposed by consent judgment entered in the Eastern District of Missouri. Civil Action No. 1567. However, only the question of personal hardship was at issue before the Board. The question of violation was not raised on that appeal.

Our holding does not imply that we are unaware of possible resulting inconsistencies in the existing Regulations. The Board's majority felt that the Examiner's holding "produces the incongruous result of allowing a person who does not hold a flight instructor's certificate to give instruction in a situation where a certificate holder is forbidden to do so", as, for example, where a flight instructor is limited as to category of aircraft. This may or may not be true, for we can conceive of a situation where a certificated pilot's instruction area may reasonably be deemed limited to the very area of his piloting restrictions. We suspect, however, that any inconsistency which may exist is directly attributable to the lack of specificity of the Regulations themselves.

Let Pike in no way misunderstand the significance of our holding. We do not condone violations, where they exist, of the statute or of the Regulations. We do not approve misstatements or false entries or an attitude of defiance or an above-the-law approach to proper regulatory authority. In view of his difficulties in 1952–3 and in view of the very fact of the present proceeding, it should be evident enough to him that his activities have apparently been at the law's edge for too long a time already. With an appropriate revision of the Regulations perhaps to be anticipated as a result of this case—assuming that the Administrator continues in his present position—so that there will be no re-

11. There apparently is presently pending in the Eastern District of Missouri an ac-

tion, No. S59C66, against Pike to recover a civil penalty.

maining doubt of certification requirements, it is strongly indicated that Pike's operations in the future are to be well within the overall framework of the law and the Regulations. His history is too damaging to afford him much assurance in further near-the-line activity.

The petition for review is therefore granted. The Board's order of March 8, 1961, is reversed and the case is remanded with instructions to affirm the examiner's initial decision.