Ray STERN, Petitioner,

v.

Alexander P. BUTTERFIELD, Administrator, Federal Aviation Administration, and National Transportation Safety Board, Respondents.

No. 75–1875.

United States Court of Appeals, Fifth Circuit.

March 24, 1976.
Rehearing Denied April 19, 1976.

Morris I. Jaffe, Dallas, Tex., for petitioner.

Peter R. Laylin, Counsel, Office of the Chief Counsel, F.A.A., National Transportation Safety Bd., Leonard Schaitman, Karen K. Siegel, Mark N. Mutterperl, Appellate Sec., Civil Div., Dept. of Justice, Washington, D. C., for respondent.

Before WISDOM, GEWIN and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Petitioner Ray Stern seeks review of an order issued by the National Transportation Safety Board ("N.T.S.B." or "Board") which revoked his pilot certificate. After carefully reviewing the record and considering the various arguments by petitioner, we conclude that the revocation order must be affirmed.

In a letter dated September 20, 1973, the Federal Aviation Administration notified Stern that it was investigating complaints that his aircraft had been violating various federal regulations governing acrobatic maneuvers. Stern replied in a letter dated September 25, denying only one of the allegations in the September 20 letter. After receiving a report of additional violations on September 23, the Administrator of the FAA, without further notice or a hearing, issued an emergency order dated September 28, 1973, revoking Stern's certificate. The revocation was based on findings that Stern had violated the following provisions of the Federal Aviation Regulations: 14 C.F.R. § 91.65(a)(1975) (operation of an aircraft so close to another aircraft as to create a collision hazard); 14 C.F.R. § 91.71(c)(1975) (operating an aircraft in acrobatic flight within a control zone); 14 C.F.R. § 91.71(d) (1975) (operation of an aircraft in acrobatic flight below an altitude of 1,500 feet above the surface); and 14 C.F.R. § 91.9 (1975) (operation of an aircraft in a careless or reckless manner so as to endanger the life or property of another).

Pursuant to the statutory review procedure, see 49 U.S.C. § 1429(a), Stern filed a petition with the N.T.S.B. for review of the revocation order. A hearing was held before an N.T.S.B. administrative law judge at the beginning of December 1973. Briefs were filed in February of 1974, and in a written decision dated May 20, 1974, the revocation was sustained. The administrative law judge based his decision solely on violations that had occurred in August of 1973. Charges relating to the September 23 offenses were dismissed on the ground that Stern had received no notice of them prior to issuance of the revocation order. Subsequently, on November 25, 1974, the Board reversed that portion of the administrative law judge's decision which dismissed the charges stemming from the September 23 incident, holding that the controlling statutory provisions, 49 U.S.C. §§ 1429(a) and 1485(a), did not require notice when the Administrator had determined that an emergency existed. The case was remanded to the administrative law judge who thereupon entered findings that Stern had performed aerobatics within a control zone on September 23 and that his conduct at that time was careless and reckless. The law judge again sustained the revocation order, this time on the basis of both the August and the September occurrences. The final order of the Board adopting the findings thus augmented and sustaining the Administrator's order of revocation was issued on February 7, 1975.

The scope of our review on appeal is defined by 49 U.S.C. § 1486(e), which provides that "[t]he findings of fact by the Board or the Administrator, if supported by substantial evidence, shall be conclusive." Petitioner maintains that the Board's order was not supported by substantial evidence, and should accordingly be reversed and set aside. His arguments in this regard, in that they challenge the weight attached to evidence adverse to his position or credibility choices made by the administrative law judge, misconceive the scope of our review under the substantial evidence test. As an appellate court reviewing an administrative order, it is not our function to reevaluate the weight of evidence or to reexamine credibility choices made by the finder of fact. See, e. g., *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456, 467 (1951); *Air East, Inc. v. National Transportation Safety Board*, 3 Cir., 1975, 512 F.2d 1227, cert. denied, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975); *Nadiak v. Civil Aeronautics Board*, 5 Cir., 1962, 305 F.2d 588, 592, cert. denied, 372 U.S. 913, 83 S.Ct. 729, 9 L.Ed.2d 722 (1963).

In this case, the administrative law judge was careful to indicate the evidence he relied upon with regard to each violation. At the December hearing, Clifford L. Reavis, a flight instructor, testified that while he was giving flight instructions on August 21, 1973 in the vicinity of Air Park and Addison Airports, near Dallas, Texas, a red Pitts Airbank aircraft came out of a vertical dive and passed within 300 feet of the aircraft he was flying. Because of the safety hazard thus created, it was necessary for Reavis to seize control of the aircraft, which was being flown by his student. He also testified that he observed the Pitts performing acrobatic maneuvers at less than 1,500 feet above the surface and within the control zone surrounding Air Park. Reavis' student confirmed this testimony. An Air Traffic Controller at Addison Airport who received Reavis' report concerning the incident established that the aircraft in question was Stern's. Another flight instructor, Warren B. Maupin, testified that he had observed Stern's red and white Pitts Special performing aerobatics within the Addison Control Zone and executing rolls 1,100 feet above the Air Park runway on August 24, 1973. Maupin's testimony was corroborated by the student flying with him at the time. Friends of Stern testified to the contrary, but the administrative law judge resolved this conflict in the evidence against Stern. Maupin also testified

that he saw a Pitts plane doing aerobatics in the control zone over Air Park on September 23, 1973, and that he had immediately reported this to the Addison Control Tower. Again, there was independent corroboration of Maupin's testimony. After landing on September 23, Stern learned that there had been a report of a Pitts Special doing aerobatics over Air Park. He confronted Maupin in his office at the Airport Flying School and threatened to sue Maupin if any difficulties resulted. Stern contends that evidence provided by Maupin should be discounted because it was prompted by this incident. This contention overlooks the fact that the violations had been reported before the confrontation in Maupin's office, and that Stern's actions there merely made it possible for Maupin to link Stern to the plane he had seen performing improper aerobatics. As the administrative law judge said with regard to this incident,

> If the respondent had not confronted Maupin after the flight, it is doubtful that his identity would have become known. Both Maupin and Mrs. Humphries [the corroborating witness] appeared honest and forthright in this testimony. . . . The writer is convinced that the testimony of Maupin as to the location of the red Pitts Special on this date, as corroborated by Mr. Humphries, is completely credible.

■ In view of the testimony which has been outlined here and which substantiates the occurrence of the violations with which Stern was charged, we conclude that there was substantial evidence in the record to support revocation of his certificate.

■ Petitioner next contends that the revocation order was void because the Administrator failed to comply with statutory notice requirements of 49 U.S.C. § 1429(a) allegedly applicable to emergency revocation proceedings. At the outset, it should be noted that Stern was notified of the nature of the charges against him at least with regard to the August offenses in the September 20 letter he received from the FAA. Our decision does not depend, however, on the existence of that letter, since in our view, the N.T.S.B. was correct in holding that the applicable statutes do not require notice prior to an emergency revocation. Section 1005(a) of the Federal Aviation Act provides that

> whenever the Administrator is of the opinion that an emergency requiring immediate action exists in respect of safety in air commerce, the Administrator is authorized, either upon complaint or his own initiative without complaint, at once, if he so orders, without answer or other form of pleading by the interested person or persons, and *with or without notice*, hearing, or the making or filing of a report, to make such just and reasonable orders, rules, or regulations, as may be essential in the interest of safety in air commerce to meet such emergency.

49 U.S.C. § 1485(a) (emphasis added). Petitioner claims that the language of this section is not controlling because of conflicting language in section 609 of the Act. Section 609 provides:

> Prior to amending, modifying, suspending, or revoking any . . . certificates, the Administrator shall advise the holder thereof as to any charges or other reasons relied upon by the Administrator for his proposed action and, *except in cases of emergency*, shall provide the holder of such a certificate an opportunity to answer any charges and be heard as to why such certificate should not be amended, modified, suspended, or revoked.

49 U.S.C. § 1429(a) (emphasis added). Petitioner argues that the placement of the phrase "except in cases of emergency" in this section implies that although a hearing is not required before an emergency revocation, prior notice is mandatory. The pertinent legislative history, however, indicates that the intent of Congress in passing section 609 was to allow the Administrator to take action without prior notice or hearing

when emergency circumstances so demanded. As the House Report stated:

In order to expedite the safety-enforcement process, section 609 of the legislation changes the present law by permitting the Administrator to amend, modify, suspend, or revoke safety certificates prior to formal proceedings before the Civil Aeronautics Board. However, in order to protect the holders of certificates from arbitrary action, the Administrator is required, *except in cases of emergency*, before taking any action *to advise the holder of the certificate of the nature of the charges against him* and to give the holder an opportunity to present informally his defenses to the Administrator.

H.R.Rep.No.2360, 85th Cong., 2d Sess. 8 (1958), 2 U.S.Code Cong. & Admin.News pp. 3741, 3748 (1958) (emphasis added). Though there may be some imperfection in the drafting of section 609 in relation to the requirement of notice issue, it is clear in light of the express language of section 1005(a) and the legislative history of section 609 that Congress intended to vest the Administrator with authority to issue emergency revocations without notice in circumstances demanding immediate action. To read section 609 as imposing a notice requirement in such situations would be impractical and opposed to congressional concern for air safety manifested in the Federal Aviation Act.

■ In the present case, after detailing the violations that Stern committed in August and September of 1973 and after noting Stern's past history of similar violations, the Administrator determined that an emergency existed and that safety in air commerce and the public interest required the revocation order to take effect immediately. After full administrative review, the Administrator's action in this regard was sustained. We find no error in the Administrator's use of emergency procedures in this case, and accordingly conclude that revocation without prior notice was authorized by sections 1005(a) and 609. Under the circumstances of this case, we also find no

basis for the argument that lack of notice in this emergency proceeding violated petitioner's due process rights. *See Air East, Inc. v. National Transportation Safety Board*, 3 Cir., 1975, 512 F.2d 1227, 1231–32, *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975).

■ Petitioner further contends that even if prior notice was not required, the Board's order should be vacated because it was not issued in compliance with the requirement in 49 U.S.C. § 1429(a) that the "Board shall finally dispose of . . [appeals from emergency revocation orders] within sixty days . . . ." As the Board noted in its final order, however, this requirement was effectively waived. At the outset, because of difficulties in gathering evidence and securing the presence of highly mobile witnesses, Stern expressly waived his right to the expedited procedures applicable with regard to emergency revocations, but indicated that the waiver was to be operative only through the hearing stage. In light of Stern's subsequent conduct in pursuing his appeal, however, we conclude that his claim to expedite emergency proceedings was also waived following the hearing. Instead of seeking an oral decision at the close of the hearing, as provided in the regulations applicable to emergency proceedings, 14 C.F.R. § 421.40(b) (1975), Stern requested that the administrative law judge file a written opinion after receiving a copy of the transcript. Further delays were caused by Stern's request that briefs be filed and considered before any decision was issued. Once the administrative law judge's decision was announced, Stern failed to file his notice of appeal with the Board within the two-day period applicable in emergency proceedings. *See* 14 C.F.R. § 421.41(a) (1975). In preparing briefs for the administrative appeal, petitioner proceeded pursuant to the rules governing non-emergency appeals, 14 C.F.R. § 421.35(a) (1975), and failed to comply with the five-day deadline applicable in emergency proceedings. 14 C.F.R. § 421.41(b) (1975). In light of these repeated failures to comply with

412

the regulations governing emergency appeals, petitioner's claim that the final revocation order should be set aside because it was not issued in sixty days is meritless.

■ With regard to two final issues raised by petitioner, we hold that the Board acted within proper discretionary limits in denying petitioner's request for oral argument on appeal from the administrative law judge's decision, *see Walker v. Civil Aeronautics Board*, 2 Cir., 1958, 251 F.2d 954, 956, and in determining that certificate revocation was the appropriate sanction to be imposed in light of the nature of Stern's violations. See *Nadiak, supra*, at 593.

Affirmed.